NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RASHEED HARGROVE,<br><br>   Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>   Respondent. | Civ. No. 04-2992<br>(WGB)<br><br>M E M O R A N D U M<br>O P I N I O N |

APPEARANCES:

Rasheed Hargrove, Prisoner No. 24180-050
U.S. Penitentiary
P.O. Box 1000
Lewisburg, PA 17837

 Pro Se Petitioner

Christopher J. Christie
United States Attorney
By: Judith H. Germano
   Assistant United States Attorney
U.S. Department of Justice
970 Broad Street, Suite 700
Newark, New Jersey 07102

 Attorney for United States of America

**BASSLER, SENIOR DISTRICT JUDGE:**

 Petitioner Rasheed Hargrove ("Petitioner") has filed the instant *pro se* motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.  Petitioner makes this motion on two grounds.  First, Petitioner claims that appellate counsel was ineffective for failing to argue on appeal that the

identity and quantity of both the heroin and cocaine must be found by the jury beyond a reasonable doubt.  Second, Petitioner claims that trial counsel was ineffective during the plea negotiation stage of the initial court proceeding by failing to give accurate advice on matters crucial to Petitioner's decision to accept the plea bargain or stand trial.

For the reasons set forth in this memorandum opinion, Petitioner's habeas corpus relief is **DENIED**.

I. Background

Petitioner was the leader of a street gang known as the Crips.  Referred to locally as the Third World Crips or Grape Street Crips, the gang operated out of the Hyatt Court housing projects in Newark, New Jersey.  United States v. Erick Johnson, et al., 89 Fed. Appx. 781, 783-84 (3d Cir. 2004).  According to testimony at trial, Petitioner and other members of the Crips controlled Hyatt Court and used it to operate their heroin and cocaine distribution business from the early 1990s until the time of Petitioner's arrest in 2001. Id.

During that time, the Crips used violence and intimidation to control their drug business, including shooting, torturing and beating persons living in Hyatt Court. Id.  Petitioner also used several homes in Hyatt Court as "stash houses" where he kept drugs, guns and money, protected by a pack of pitbull dogs. Id. Paulette McQueen, a resident of Hyatt Court, testified that her

apartment had been a "stash house" and that Petitioner and others had beaten her and held her face against a hot radiator long enough to permanently scar her after she had been accused of stealing their drugs. Id.

In 1998, as part of a federal investigation, undercover agents and cooperating witnesses made a total of three drug purchases of heroin and crack cocaine from Petitioner over a three year period.  On August 22, 2001 a federal grand jury in Newark, New Jersey returned an indictment charging Petitioner with conspiracy to distribute and to possess heroin and cocaine base, specifically, 'crack cocaine,' in violation of 21 U.S.C. §§ 841, and 846.  The indictment also charged Petitioner with the intent to distribute heroin in violation of 21 U.S.C. § 841, and 18 U.S.C. § 2. (See Government's Presentence Investigation Report ("PSR"), Ex. 1, ¶¶ 2-3.)  On May 2, 2002, a federal grand jury returned a superseding indictment charging Petitioner with conspiracy to distribute and possess with the intent to distribute controlled substances, namely more than one kilogram of heroin and more than five kilograms of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A).  The superceding indictment also charged Petitioner with two counts of distribution and possession with the intent to distribute heroin in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. (See Ex. 1, PSR, ¶¶ 5-8.)

On June 28, 2002, a jury found Petitioner guilty on all counts, and specifically found that the conspiracy involved five kilograms or more of cocaine base and one kilogram or more of heroin. (See Ex. 1, PSR, ¶ 13.)

On November 1, 2002, the Honorable Alfred M. Wolin sentenced Petitioner to life imprisonment plus two concurrent sentences of 240 months of imprisonment. Johnson, *et al.*, 89 Fed. Appx. at 786.

Petitioner appealed his sentence to the Third Circuit on three grounds.  First, that prosecutorial misconduct had occurred during plea negotiations when the Government failed to turn over their inculpatory evidence in a timely fashion.  Petitioner claimed that was it not for this misconduct, he would have accepted the plea agreement offered by the Government.  Second, that prosecutorial misconduct had occurred when the prosecutor in closing remarks had stated that the Petitioner had been involved in four drug buys when he was in fact only involved in three. Lastly, challenging his sentence under Apprendi v. New Jersey, 530 U.S. 466 (2000)(holding that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt), Petitioner argued that the trial judge had erred by not instructing the jury that the identity and the quantities of the cocaine needed to have been found beyond a reasonable doubt

because this finding could increase the statutorily prescribed maximum sentence. Johnson, *et al.*, 89 Fed. Appx. at 787-88.

The Third Circuit affirmed the convictions and sentence. The Court held that Petitioner did not reveal any evidence or legal basis for prosecutorial misconduct during plea negotiations. The Court also held that while the prosecutor's closing remarks were improper, they were not prejudicial in the context of the trial as a whole.

Lastly, and relevant to the instant petition, the Court held that since Petitioner had not challenged the jury's finding that he conspired to distribute and possessed with the intent to distribute one or more kilograms of heroin, the Court would not address the same question in the context of cocaine. The Court held that because the heroin charge alone was sufficient to support a life sentence, the Apprendi challenge was moot. Id. at 787-88.

On July 26, 2004, Petitioner filed a petition to vacate, set aside, or correct his sentence, pursuant to § 2255.

II. Discussion

Section 2255 provides relief to a federal prisoner seeking release from incarceration on any one of the following grounds: (1) the imposed sentence violates the Constitution or laws of the United States, (2) the court did not have jurisdiction to impose sentence, (3) the sentence exceeds the maximum authorized by law,

or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.  A petition for habeas relief under § 2255 will be granted "only if the sentence results in a 'fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" United States v. Cannistraro, 734 F. Supp. 1110, 1119 (D.N.J. 1990) (quoting Hill v. United States, 368 U.S. 424, 427 (1962)).  Furthermore, a petitioner for habeas relief must set forth facts supporting each claim. See Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir.), cert denied, 484 U.S. 946 (1987).

Petitioner asserts two separate bases for relief; however, as both claims assert ineffective counsel, the standard of review is the same for each.  The Supreme Court defined the standard for ineffective counsel in Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Court held that a defendant must satisfy two requirements for counsel to be found ineffective. Id. at 687.  First, the defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." Id.  This is achieved by identifying the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. Id. at 690.  Second, the defendant must show that counsel's performance prejudiced the defense, depriving the defendant of a fair trial and there is, therefore, a reasonable

6

probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. Id. at 694; see also U.S. v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Furthermore, if a defendant fails to satisfy either requirement of the Strickland test, the court need not consider the other. Id. at 697.

A section 2255 petitioner has the burden to overcome the strong presumption by the court that counsel did indeed provide effective assistance. See United States v. Williams, 948 F. Supp. 956, 960 (D. Kan. 1996), cert. denied, 522 U.S. 1033 (1997).

### A. Ineffective Appellate Counsel

Petitioner asserts that his appellate counsel should not only have made an Apprendi challenge on the quantity of cocaine, but also on the quantity of heroin.

While the Third Circuit chose not to address the Apprendi challenge, the jury verdict sheet clearly and unambiguously asked the jury "to determine by proof beyond a reasonable doubt the quantity of drugs as to each drug involved in the conspiracy." (See Jury Verdict Form, United States v. Hargrove, Cr. No. 01-538(AMW)(D.N.J. June 28, 2002).)  The jury found that the conspiracy involved both five kilograms or more of cocaine and one kilogram or more of heroin. Id.

Appellate counsel need not raise every issue but may select the issues he or she deems the strongest and most likely to

7

succeed. See Smith v. Robbins, 528 U.S. 259, 288 (2000). Only by ignoring issues that are clearly stronger then those raised, does appellate counsel run the risk of failing the Strickland test. Id.

Petitioner has produced no evidence that shows his appellate counsel did not use reasonable professional judgment in choosing to not challenge the quantity of heroin. Petitioner also fails to demonstrate that but for counsel's alleged errors, the results of the proceeding would have been different. Strickland, 466 U.S. at 694. In fact, the result would not have been different had appellate counsel raised an Apprendi challenge to the quantity of heroin. (See Nov. 1, 2002 Trial Transcript at 20: 8-13; Ex. 1, PSR, ¶¶ 4-8.) The jury's findings were unambiguous and the jury sheet clearly asked the jury to find beyond a reasonable doubt the quantity of both the cocaine and the heroin.

### B. Ineffective Trial Counsel

"[A] defendant's right to effective counsel includes the period of his representation during the plea process as well as during a trial." Hill v. Lockhart, 474 U.S. 52, 58 (1985).

Petitioner asserts that trial counsel was ineffective during the plea negotiation stage of the initial court proceeding by failing to give accurate advice on matters crucial to Petitioner's decision to accept the plea bargain or stand trial. Petitioner alleges that had counsel advised him of the multiple

8

episodes of audio and video surveillance tapes implicating him in the crimes charged, then he would have accepted the Government's plea offer.

Petitioner's sole piece of evidence is a copy of a letter trial counsel sent to Petitioner on March 16, 2004, after the appeal. The letter was sent in response to a request from Petitioner asking trial counsel to sign a declaration claiming he had been ineffective during the plea process. Counsel refused to sign the declaration and wrote that he had in fact advised Petitioner to "enter into serious plea negotiations with the Government." (See March 16, 2004 letter from counsel Dennis Mautone to Petitioner at ¶ 3.) Counsel did write that "the Government's failure to provide evidence and/or discovery as required on or before May 13, 2002 significantly hampered my ability to advise you on the issue of plea bargaining." Id. However, counsel also wrote that he warned Petitioner that the Government would likely produce significant additional discovery. See id. Petitioner provides no other evidence that shows counsel's representation during the plea phase was deficient or that counsel made errors so serious that counsel was not functioning as guaranteed by the Sixth Amendment. Stickland, 466 U.S. at 687.

Petitioner also claims that he was unaware of the audio and video evidence implicating him and that counsel did not persist

9

in attempting to ascertain whether the government was in possession of such evidence.

However, the record reveals that Petitioner was in fact aware that audio and video tapes existed as early as March 15, 2002, during pre-trial proceedings. (See Government Exhibit 2, Tr. of Proceedings, United States v. Hargrove, Cr. No. 01-538(AMW)(D.N.J. March 15, 2002)).  Petitioner and counsel were present at these proceedings where Judge Wolin stated: "There were 16 audio tapes that the government says are available . . . ." Id. at pg. 17, lines 18-21.  Moments later, Mr. Fusella, counsel for Petitioner's co-defendant, stated: "I found out there were not only audio tapes but, rather, videotapes at the time . . . ." Id. at pg. 19, lines 18-19.  The transcript suggests that Petitioner's counsel may not have had a chance to view the tapes before plea negotiations were withdrawn, however, the Government does not have a legal duty to turn over inculpatory evidence during the plea process. See U.S. v. Kidding, 560 F.2d 1303, 1313 (7th Cir. 1977)(holding that a defendant does not have a substantial right that the government must reveal to him all inculpatory evidence so that he may know exactly how strong the case is against him and thereby decide whether to plea bargain with the prosecutor).  Petitioner has failed the burden of producing any evidence that suggests counsel was deficient or acted without reasonable professional judgment.

10

As Petitioner has failed to introduce any evidence proving ineffective counsel under the Strickland test, this Court must consider whether an evidentiary hearing is required to settle any questions of fact pursuant to Rule 8(a) of the Rules Governing § 2255 Proceedings.  If the Court is able to fully evaluate the issues before it and finds that the evidence conclusively shows movant is not entitled to relief, then the district court has the discretion to deny an evidentiary hearing.  See Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989), appeal after remand, 904 F.2d 694 (3d Cir. 1990), cert. denied, 500 U.S. 954 (1991).  After review of Petitioner's motion, reply brief, the Government's response, and the record of evidence, the Court holds that an evidentiary hearing is not required as Petitioner's claims are without merit. See Rule 8(a) of the Rules Governing § 2255 Proceedings.

III. Conclusion

For the reasons set forth above, Petitioner's habeas corpus relief is **DENIED**.

An appropriate Order follows.

Dated: July 25, 2006

/S/ WILLIAM G. BASSLER
William G. Bassler, U.S.S.D.J.